IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg

FILED AUG 10 2007 US DISTRICT COURT WHEELING, WV 26003

IN RE:

Civil Action No. 3:07-cv-36

JONATHAN JEROME BARDELL,

Appellant/Debtor.

## MEMORANDUM OPINION AND ORDER
## AFFIRMING DECISION OF BANKRUPTCY COURT

This civil action is an appeal from the United States Bankruptcy Court for the Northern District of West Virginia of a decision which found that the debtor was not entitled to cure his mortgage default or to avoid the pre-petition foreclosure sale. The decision is published as *In re Bardell*, 361 B.R. 468 (Bankr. N.D. W.Va. 2007). This Court, having received and reviewed the briefs of the parties and having heard oral argument, is of the opinion that the decision of the Bankruptcy Court should be affirmed.

### I. Factual and Procedural History

The facts of this case are not in dispute. In 2001, the debtor borrowed the sum of One Hundred and Eight Thousand Three Hundred Dollars ($108,300.00) from Branch Banking and Trust (hereinafter "BB&T"). Repayment of the loan was secured by the execution and recordation of a deed of trust on the debtor's principal residence. The debtor defaulted under the promissory note, and on December 29, 2005, the trustee under the deed of trust conducted a foreclosure sale. The foreclosure sale was conducted in

1

accordance with West Virginia law[1], and the debtor's property was sold to Gracie Mews, LLC (hereinafter "Purchaser") for $130,000. At the time of the sale, the Purchaser posted a ten percent (10%) deposit and executed the Trustee's Memorandum of Sale, which provided that final settlement would occur within twenty (20) days of the sale.

Two days later, on December 31, 2005, the debtor filed a petition under Chapter 13 of the Bankruptcy Code. The debtor included the property in question in his bankruptcy schedules and filed a notice of the bankruptcy filing in the Office of the Clerk of the County Commission of Jefferson County, West Virginia. The debtor's Chapter 13 petition was filed before the foreclosure sale deed was recorded, and the debtor is attempting to undo the foreclosure sale and cure his mortgage arrearage in his proposed Chapter 13 plan. In its decision, dated February 8, 2007, the Bankruptcy Court found that the foreclosure sale prior to the date of the filing of the debtor's petition extinguished the debtor's right to cure his default. A timely notice of appeal was filed on March 28, 2007 (Doc. 1).

## II. Standard of Review

This Court reviews the bankruptcy court's legal determinations de novo and its factual findings for clear error. *In re Dornier Aviation*, 453 F.3d 225, 230-31 (4th Cir. 2006); *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992).

## III. Discussion

Title 11, section 541 of the Bankruptcy Code, 11 U.S.C. § 541, provides that the bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case."

---

[1] At oral argument, the debtor confirmed that he does not challenge the manner in which the property was sold.

"Except for the rights of the bankruptcy trustee to enlarge the bankruptcy estate under 11 U.S.C. §§ 544, *et seq.*, the property interests which pass to the bankruptcy estate are no more extensive than those possessed by the debtor as of the date of filing. Filing bankruptcy cannot revest the debtor with property lost prepetition by foreclosure. *See* 5 **Collier on Bankruptcy** ¶ 541.04, at 541-12 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). The debtor's interest in real property is determined by the law of the state in which the real property is located. *See **Butner v. United States**,* 440 U.S. 48, 52-55 (1979) (decided under the Bankruptcy Act); 5 **Collier on Bankruptcy** ¶ 541.05, at 541-15. A foreclosure sale is deemed complete so as to preclude the Debtors from rescinding the sale simply by filing a bankruptcy petition when the debtor no longer has under state law the right known as the 'equity of redemption.' *In re Wolfe*, 344 B.R. 762, 767 (Bankr. W.D. Va. 2006).

Accordingly, a significant issue in this case is whether the debtor possessed legal or equitable title to the property at the time of the filing of his petition.

At oral argument, the parties agreed and stipulated that legal title passes to the trustee at the time of the execution of the deed of trust, with the equitable title remaining with the borrower or grantor. This is consistent with the language of the deed of trust in this case, in which the debtor granted the property to the Trustee, in trust. *See **Citizens' Nat. Bank of Connellsville v. Harrison-Doddridge Coal & Coke Co.**,* 89 W.Va. 659, 109 S.E. 892, 895 (1921) ("assignment of a mortgage carries the legal title"); ***First Nat. Bank v. McGraw***, 85 W.Va. 298, 101 S.E. 474 (1919); ***Cox v. Horner***, 43 W.Va. 786, 28 S.E. 780 (1897). *See also **Gravatt v. Lane***, 121 Va. 44, 92 S.E. 912 (1917); ***Abdelhaq v.***

*Pflug*, 82 B.R. 807, 809 (E.D. Va. 1988).[2]

As noted by Judge Flatley below, "West Virginia is a deed of trust state with non-judicial foreclosure. W. Va.Code § 38-1-3 ('The trustee in any trust deed given as security shall, whenever required ... sell the property conveyed by the deed ... at public auction, having first given notice of such sale....'); *Villers v. Wilson*, 172 W.Va. 111, 304 S.E.2d 16, 19, n. 4 (1983) ('Foreclosure under a trust deed normally occurs when a trustee, designated by the debtor in the trust deed, executes the trust and sells the property. In the trust deed situation, there is normally no requirement that the trustee institute a proceeding in any court; and there is also no requirement that he obtain judicial authorization to act.'). Consequently, a foreclosure proceeding in West Virginia can occur relatively quickly. *See, e.g., Fayette County Nat'l Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232, 240 (1997) (describing West Virginia's trustee foreclosure laws to be 'relatively quick and inexpensive')." *In re Bardell*, 361 B.R. at 471-72.

In *Fleming v. Holt*, 12 W.Va. 143 (1877), the West Virginia Supreme Court of Appeals held that:

> In a sale by a trustee, the court does not accept the bid of the purchaser, but it is accepted by the auctioneer, when he knocks the land down, and on the making by him of a memorandum of the sale and its terms, signed by the auctioneer, the contract for the sale is as complete as the contract for the sale made by a commissioner is when the court accepts the bid by confirming the sale. After such knocking down of the land by the auctioneer

---

[2]Virginia law is particularly relevant in areas of property law, inasmuch as West Virginia adopted the common law of Virginia at its inception. *West Virginia Code* § 2-1-1.

and the making of such memorandum, the purchaser must accept the deed and pay the purchase money, though he does find the title defective. He must if he wishes to do so, investigate the title in this case, as in the other, while the contract is incomplete, that is in the last case, before land is knocked down to him.

12 W.Va. at 156.

This holding was reiterated by the West Virginia Supreme Court in ***Atkinson v. Washington & Jefferson College***, 54 W.Va. 32, 46 S.E. 253 (1903), in which the court stated:

A contract of sale between a trustee in a deed of trust and a purchaser is complete when the trustee, selling at auction, knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same.

Syl. Pt. 1.

In the ***Atkinson*** decision, the court noted that the existence of the memorandum of sale did not confer legal title on the purchaser, but rather conferred the right to call for the legal title and to enforce specific performance of the contract of sale. In other words, after the property is knocked down by the auctioneer and a memorandum of sale is executed, the equitable title to the property passes to the purchaser.

These decisions are consistent with the law in Virginia. "After acceleration of the debt and before sale, the debtor has an 'equity of redemption.'" ***Abdelhaq v. Pflug***, 82 B.R. 807, 810 (E.D. Va. 1988), *citing* ***In re Rolen***, 39 B.R. 260, 263 (Bkrtcy.W.D. Va.1983). "Equity of redemption allows the debtor to pay the indebtedness and require the secured

party to reconvey the property to him free of the deed of trust lien." *Id.* "Once the property is sold, the debtor's equitable interest is extinguished, unless he can show that there was some deficiency in the sale process." *Id.* "According to the Bankruptcy Court for the Western District of Virginia, 'Virginia law appears to be conclusive [that] [i]n a sale by a trustee under a Deed of Trust, the sale is complete when the trustee knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same.'" *Id.*, citing *In re Rolen*, 39 B.R. at 264.

In *Abdelhaq*, Judge Ellis stated that "[t]he Abdelhaqs are correct in asserting that Virginia law requires a deed to transfer legal title to real property. *See* Va. Code § 55-2. However, this rule does not change the fact that they possessed neither a legal nor an equitable interest in the property once the auctioneer's hammer fell and the memorandum of sale was signed. At this point, and before settlement, the trustee retains legal title to the property, while the purchaser possesses the right to enforce the sale in equity. *See Ryland Group, Inc. v. Wills*, 229 Va. 459, 331 S.E.2d 399, 402-03 (1985). Thus, because the Abdelhaqs possessed no interest in the condominium units at the time they filed their petition, the property never became part of their estate under section 541. From this it follows, of course, that no automatic stay ever attached to the property to halt consummation of the foreclosure sale." 82 B.R. at 807.

In *Southwest Products Co., Inc. v. United States*, 882 F.2d 113 (4th Cir. 1989), the Fourth Circuit reiterated that "[w]hile it is true that Virginia law requires a deed to transfer *legal title* to real property, *see* Va.Code § 55-2, when the trustee 'knocked the land down to [Southwest],' made a memorandum of sale and signed it, the sale was complete,

6

*In Re Rolen*, 39 B.R. 260, 264 (W.D. Va.1983), and Southwest acquired an *equitable interest* in Laskin Road. **Abdelhag v. Pflug**, 82 B.R. 807, 810 (E.D.Va.1988); **Ryland Group, Inc. v. Wills**, 229 Va. 459, 331 S.E.2d 399, 402-03 (1985)."

In **Litton v. Wachovia Bank (In re Litton)**, 330 F.3d 636, 645 (4th Cir. 2003), the Fourth Circuit noted that "Wachovia's right to institute foreclosure proceedings is subject to the provisions of the Bankruptcy Code that permit a debtor to file a bankruptcy petition **up to the time of a foreclosure sale**. See 11 U.S.C. § 1322(c)(1)." (Emphasis added).

The holding that the foreclosure sale itself terminates the debtor's property rights is consistent with the holdings in other courts as well. The Sixth Circuit has held that the actual auction at which the property is knocked down to the high bidder ends the debtor's right to cure the default. The Court stated that "[t]he event we choose as the cut-off date of the statutory right to cure defaults is the sale of the premises. We pick this in preference to a number of other potential points in the progress of events ranging from the date of first default to the day the redemption period expires following sale." *In re Glenn*, 760 F.2d 1428 (6th Cir.), *cert. denied*, 474 U.S. 849 (1985).

In **Ferrell v. Southern Financial**, 179 B.R. 530 (W.D. Tenn. 1994), the District Court found that the actual sale of the property terminated the debtor's rights in the property.

Similarly, in **Pearson v. Fleet Finance Center, Inc.**, 75 B.R. 254 (Bankr. N.D. Ga. 1985), the Bankruptcy Court stated:

> The pivotal determination with respect to the Debtor's attempt to cure and reinstate the mortgage is the point at which the Debtor's equity of redemption

expires under Georgia law. As indicated in [*In re*] *Gray*, 37 B.R. 532 (Bankr. N.D. Ga. 1984] and [*In re*] *Foster*, [37 B.R. 537 (Bankr. N.D. Ga. 1984)], Georgia law states that the equity of redemption expires when the high bid is received at the foreclosure sale. See *Carrington v. Citizens Bank of Waynesboro*, 144 Ga. 52, 53, 85 S.E. 1027 (1915); *McKinney v. South Boston Savings Bank*, 156 Ga.App. 114, 116, 274 S.E.2d 34 (1980).

In *Oregon v. Hurt (In re Hurt)*, 158 B.R. 154 (9th Cir. BAP 1993), the Ninth Circuit Bankruptcy Appeals Panel also held that the rights of the debtor are terminated by the sale of the property:

> The concept of property of the estate under §§ 541 and 1306 is the proper starting point to establish uniformity within the circuits. [*In re*] *Thompson*, 894 F.2d [1227, 1229 (10th Cir. 1990). Section 541 provides that at the commencement of the case, the estate includes "all legal or equitable interests of the debtor in property...." 11 U.S.C. § 541(a)(1). However, a state law evaluation is not necessary to determine the debtor's interest.... Accordingly, the *Thompson* court looked at the debtor's redemptive rights to create uniformity.
>
> The statutory or equitable rights of redemption are included in the concept of property under § 541. *Thompson*, 894 F.2d at 1230 (citing *Collier on Bankruptcy* ¶ 541.07[3] ). "All states apparently permit redemption of mortgaged property, not simply until the date of the foreclosure judgment, but until a foreclosure sale.... About half of the states go beyond that, to allow

8

a statutory period of redemption." ***Thompson***, 894 F.2d at 1230 (citing ***Real Estate Finance Law*** § 7.1, at 478-479).

Although this analysis implies the cure should be available until the conclusion of the statutory redemption period, the cutoff for cure should nevertheless be established at the foreclosure sale. ***Thompson***, 894 F.2d at 1230-31. The foreclosure sale introduces a third party when, as here, the property is purchased by someone other than the mortgagee. See, ***Thompson***, 894 F.2d at 1230. In addition, the inherent philosophy separating the redemption periods supports the adoption of the foreclosure sale as the cutoff point. "[T]he equitable period of redemption before sale exists to provide the debtor sufficient time to attempt to refinance the property which appears to be the same goal as the bankruptcy right to cure." ***Thompson***, 894 F.2d at 1230 (citations omitted). While "the principle objective of statutory redemption is to assure that the foreclosure sale brings a fair price." ***Thompson***, 894 F.2d at 1230 (citations omitted).

158 B.R. at 160-161.

In the case of *In re Martin*, 276 B.R. 552, 557 (Bankr. N.D. Miss. 2001), the Bankruptcy Court held that "§ 541(a)(1) provides that a bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the date of the bankruptcy filing.... Under Mississippi law, the right of redemption is extinguished upon the sale of the property at foreclosure. (citations omitted). Accordingly, since there were no irregularities in the foreclosure processes, the court finds that the debtor herein possessed no legal or

equitable interest in the subject property at the time that her bankruptcy case was filed."

The appellant relies, in part, upon *Smith v. Mooney*, 155 B.R. 145 (Bankr. S.D. W.Va. 1993), in which Judge Friend held that a foreclosure sale was not complete when the deed was not delivered until after the filing of the bankruptcy petition. This Court respectfully disagrees with Judge Friend. In his discussion, Judge Friend cited *Atkinson v. Washington & Jefferson College*, 54 W.Va. 32, 40, 46 S.E. 253 (1903), for the proposition that the acceptance of the bid at the foreclosure sale and execution of a memorandum of sale does not confer title on the purchaser, but rather confers a right to call for the deed. While this is certainly true, the fact remains that after the bid is accepted and the memorandum executed, the debtor has no interest in the property. The equitable interest in the property lies with the purchaser at the sale. The legal title rests in the hands of the trustee. While the purchaser only has a right "to call for the deed," it is the trustee to whom the call is to be made, and it is the trustee who will execute the deed. See *West Virginia Code* § 38-1-6.

In addition, 11 U.S.C. 1322(c)(1) provides no relief. Section 1332(c)(1) provides that "a default with respect to ... a lien on the debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law."

As noted by Judge Flatley in his opinion:

Courts have been divergent in determining whether the language of § 1322(c)(1) is ambiguous. One line of cases-the majority-has adopted the "gavel rule," finding that the phrase "sold at a foreclosure sale" refers to a

specific event-a sale occurring at a foreclosure auction. The additional phrase "conducted in accordance with applicable nonbankruptcy law" refers merely to the state procedures required to be followed in noticing and holding a foreclosure auction. See, e.g., *Cain v. Wells Fargo Bank, NA*, 423 F.3d 617, 620 (6th Cir.2005) (holding that § 1322(c)(1) did not allow debtors to cure home mortgage defaults after a foreclosure sale regardless of state law redemption rights); *In re McCarn*, 218 B.R. 154, 160-61 (10th Cir. BAP 1998) (finding that under Wyoming law, the debtors' right to cure a mortgage arrearage in a Chapter 13 plan expired at the time of the foreclosure sale even though the state has a statutory redemption period); *In re Watts*, 273 B.R. 471, 476 (Bankr.D.S.C.2000) (granting the creditor's motion for relief from stay to allow it to record the foreclosure sale deed for the foreclosure sale that occurred prior to filing because the debtor no longer retained any equitable interest in the property and no right to cure the mortgage arrearage); *In re Crawford*, 232 B.R. 92, 96 (Bankr.N.D.Ohio 1999) (holding that the debtor's right to cure ended when the sheriff accepted the bid at the foreclosure auction even though the order confirming the sale had not been entered at the time of the bankruptcy filing). Thus, these courts employ a plain meaning approach to § 1322(c)(1) and conclude that the right to cure a default terminates once the hammer falls at the foreclosure sale.

361 B.R. at 470.

As noted above, in West Virginia a foreclosure sale is "complete" when the trustee

11

or auctioneer accepts the bid and executes a memorandum of sale. "Even though legal title to the real estate does not pass to the purchaser until the deed is delivered, equitable title passes to the purchaser upon the completion of the contract for sale in the absence of a right of redemption. See 55 Am.Jur.2d, *Mortgages* § 797 (2006). Black's Law Dictionary defines 'sale of land' as 'a transfer of title to real estate from one person to another by a contract of sale.' Therefore, absent a statutory right of redemption, the transfer of equitable title by the contract for sale completes the sale and ends a debtor's right to cure the arrearage under § 1322(c)(1)." *Bardell*, supra at 472.

As correctly stated by Judge Flatley, West Virginia law provides no right to a mortgagor to redeem the property after a foreclosure sale.

In *Cain v. Wells Fargo Bank, N.A. (In re Cain)*, 423 F.3d 617, 619 (6th Cir. 2005), the Sixth Circuit held that "§ 1322(c)(1) unambiguously designates the foreclosure sale itself as the event that terminates a Chapter 13 debtor's right to cure a home mortgage default by filing a plan that calls for repayment outside the redemption period." The Sixth Circuit "agree[d] with the courts that have held § 1322(c)(1) to be unambiguous. In our view, 'a foreclosure sale' is a single, discrete event-typically an auction at which the highest bidder purchases the property. See *Crawford*, 232 B.R. at 96; *In re McCarn*, 218 B.R. 154, 160 (BAP 10th Cir.1998)." *Id.* at 620.

At oral argument before this Court, the appellant (1) argued that the purchaser did not pay the full amount due under the memorandum of sale in a timely manner, but rather the trustee and the purchaser extended the date of payment by agreement, and (2) asked what would happen to the equity of redemption if the purchaser should fail to follow through

with the purchase. With regard to the first argument, this Court cannot fault the trustee and purchaser for waiting to receive a lift stay order from the Bankruptcy Court before completing the sale when the debtor was arguing that the property was an asset of the bankruptcy estate. See **Abdelhaq v. Pflug**, 82 B.R. 807 (E.D. Va. 1988).

With regard to the second argument (which is a hypothetical since there is no indication in the record that the purchaser will be unable to complete the purchase), case law indicates that the debtor's equitable right of redemption is terminated at the first sale, even if a second sale should be necessary. **In re McCreery**, 72 B.R. 275 (Bankr. N.D. Ohio 1987).

## IV. Conclusion

Based upon the foregoing, it is the opinion of this Court that the Bankruptcy Court correctly determined that (1) the debtor is not entitled to cure his mortgage default; (2) the debtor has no basis upon which to avoid the foreclosure sale; and (3) that BB&T is entitled to modification of the automatic stay to permit it to record the trustee's deed.

Accoringly, it is hereby **ORDERED** that the decision of the United States Bankruptcy Court for the Northern District of West Virginia, **In re Bardell**, 361 B.R. 468 (Bankr. N.D. W.Va. 2007), is **AFFIRMED**.

The Clerk is directed to provide copies of this Order to all counsel of record.

**Dated:** August 10, 2007.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE